UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Ferguson Igbinosun,

        Petitioner,

  -vs-

State of New York,

        Respondent.
_____

**DECISION AND ORDER**
**No. 06-CV-6204T**

## I. Introduction

*Pro se*[1] petitioner Ferguson Igbinosun ("Ferguson Igbinosun" or "Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered April 28, 2004, in New York State, County Court, Genesee County, convicting him, after a jury trial, of one count of Grand Larceny in the Third Degree (N.Y. Penal Law ("Penal Law") § 155.35) and five counts of Criminal Possession of a Forged Instrument in the Second Degree (Penal Law § 170.25).

For the reasons stated below, the writ is denied and the petition is dismissed.

---

[1] By Motion dated April 2, 2009, Petitioner requested that the Court appoint him counsel to proceed in the present action. See Docket No. 15 ("Motion to Appoint Counsel by Ferguson Igbinosun"). That request is denied by this Decision and Order because Petitioner does not need the assistance of counsel to present his claims, which can be addressed and reviewed solely by means of the record already before the Court.

## II. Factual Background and Procedural History

### A. Introduction

In early 2003, Petitioner opened two checking accounts at different banks in different names and deposited approximately $100 in each. He presented various forms of false identification when opening these accounts. Petitioner then wrote a $5,000 check from one account and deposited it into another. Before the bank realized that there were insufficient funds in the account to cover this check, Petitioner cashed three checks totaling approximately $4,300.

Petitioner was charged by a Genesee County Grand Jury with one count of Grand Larceny in the Third Degree and five counts of Criminal Possession of a Forged Instrument in the Second Degree. Petitioner proceeded to trial on March 8, 2004.

### B. The Trial

#### 1. The People's Case

On January 7, Petitioner opened a checking account at the Bank of Castile under the name of Tyrone Barnes ("Barnes"). Petitioner provided the bank with the address 620 Fargo Avenue in Buffalo, presented a New York State ID card bearing this name and Petitioner's photograph, and provided a social security number.[2] Petitioner signed the name Barnes to the opening deposit agreement

---

[2] A special agent with the Social Security Administration testified that the social security number provided was not assigned to an individual named Barnes. T.T. 370.

and deposited $100 into the account. Trial Transcript [T.T.] 282-85, 295, 430.

On March 11, 2003, Petitioner opened a checking account at the Community Bank in the name of Derrick T. Mitchell ("Mitchell"). Petitioner gave the bank a social security number[3] and provided a New York State ID and a Niagara Community College ID bearing this name to open the account. Petitioner deposited $100 into the account. T.T. 303-08.

On March 26, 2003, a check in the amount of $5,000 was drawn from the Mitchell account and deposited into the Barnes account. On March 27, 2003, three checks were written from the Barnes account and were made out to Barnes. These checks were cashed at three different branches of the Bank of Castile. On March 28, 2003, the $5,000 check was returned to the Community Bank when it was discovered that there was only $120 in the account. The $5,000 check was not honored and the Bank of Castile suffered the loss. T.T. 286-90, 308-09, 431-34.

Steven K. Roney ("Roney"), a special agent with the United States Immigration and Customs Enforcement Agency[4], testified that on June 4, 2003 he observed Petitioner leaving a

---

[3] This social security number was not assigned to an individual named Derrick T. Mitchell. T.T. 371.

[4] At the time of his arrest, Petitioner was a lawful permanent resident alien. T.T. 313, 319. The record reflects, however, that Petitioner emigrated from Nigeria, Africa to the United States sometime around 1987, entering the country illegally. T.T. 319.

residence located at 620 Fargo Avenue in Buffalo. Roney stopped Petitioner's vehicle and arrested him. Petitioner produced two forms of ID in his own name. Business cards from the Bank of Castile and First Niagara Bank were found in his pockets. The name Mitchell was written on the Bank of Castile card, accompanied by an account number. T.T. 311-14, 317, 326-33.

The lower apartment at 620 Fargo Avenue and an upper apartment at 91 Butler Avenue were searched. A utility bill in Petitioner's name addressed to the Butler Avenue address and various other documents in Petitioner's name were found in the Fargo Avenue residence. The following items were found in the Butler Avenue residence: (1) a New York State ID card in the name of Barnes, which matched the photocopy of the ID card presented to the Bank of Castile; (2) a University at Buffalo ID card in the name of Barnes; (3) a Niagara Community College ID card in the name of Mitchell; and (4) various items bearing Petitioner's name. T.T. 314-15, 347-54.

Four photo images from New York State drivers license applications were admitted into evidence bearing the names Mitchell, Barnes, Calvin Walker and Ferguson Igbinosun. Senior Department of Motor Vehicles ("DMV") Investigator Ryan Lang testified that he believed the four individuals pictured on these applications were the same person. T.T. 338, 344, 469.

The following stipulation was read into the record: "[o]n January 7, 2004, the defendant . . . admitted to applying for a New York State DMV non-driver ID card in Lockport, New York, in the name of Derrick Mitchell on November 5, 1999." The trial court instructed the jury that this evidence was not admitted to prove that Petitioner had a propensity to commit the charged crimes, but rather as proof of identity. T.T. 264-65.

### 2. Petitioner's Case

Shiller Reid ("Reid") testified that Petitioner was her "common law husband" and that, on June 4, 2003, she resided at 620 Fargo Avenue with Petitioner. Reid stated that family members, such as Petitioner's brother, Otis Igbinosun ("Otis"), visited this address. Reid testified that in June 2003, her and Petitioner were having problems and Petitioner was in the process of moving to a new apartment located at 91 Butler Avenue. Reid testified that Otis also had access to the Butler Avenue apartment. Reid stated that Petitioner and Otis looked alike and, when confronted with the photographs from the four New York State drivers license applications, she could not tell whether they depicted Otis or Petitioner. T.T. 375-85, 405.

### 3. Verdict and Sentence

The jury found Petitioner guilty of one count of Grand Larceny in the Third Degree and five counts of Criminal Possession of a Forged Instrument in the Second Degree. T.T. 591-92. Petitioner

was sentenced to concurrent terms of 2 1/3 to 7 years imprisonment on each of the counts. Sentencing Minutes [S.M.] 8-9.

**C.     Petitioner's Direct Appeal**

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on December 22, 2005. People v. Igbinosun, 24 A.D.3d 1250 (4th Dep't. 2005). Leave to appeal was denied by the New York Court of Appeals. People v. Igbinosun, 8 N.Y.3d 923 (2007).

**D.     The Habeas Corpus Petition**

Petitioner filed the habeas corpus petition presently before the Court in which he seeks relief on four grounds. One of Petitioner's claims is exhausted and properly before this Court. Petitioner's remaining claims, which he failed to properly exhaust in the state courts, are deemed exhausted but procedurally defaulted. See 28 U.S.C. § 2254(b)(1)(A); Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991).

**III. General Principles Applicable to Habeas Review**

   **A.     The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of

incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828

(2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

**IV. Petitioner's Claims**

### 1. IMPROPER SEARCH AND SEIZURE

Petitioner argues that the evidence seized from his residence should have been suppressed because the search warrants were improperly issued. Petition [Pet.] ¶22B; Supplemental Letter [S.L.], Page 3. Petitioner raised this claim on direct appeal and the Appellate Division rejected it on the merits. Igbinosun, 24 A.D.2d at 1251. Although Petitioner properly exhausted this claim in the state courts, the claim does not present an issue that is cognizable by this Court on habeas review.

In general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494, (1976) (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided the *opportunity* to the state prisoner for full

and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978) (emphasis added). A Federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. See N.Y. Crim. Proc. Law ("CPL") § 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in CPL § 710.10 et seq. as being facially adequate).

Here, Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with, and indeed took full advantage of, the opportunity to fully adjudicate this matter in state court. Petitioner asserted this claim at a pre-trial suppression hearing, and raised it again on direct appeal. The

Appellate Division affirmed the trial court's refusal to suppress the items seized, finding that "the items were seized during the execution of search warrants that were properly issued upon probable cause, based in part on information provided by other law enforcement officers to the officer who appeared before the Magistrate." Igbinosun, 24 A.D.2d at 1251.

Moreover, Petitioner has not demonstrated that an "unconscionable breakdown" occurred in the courts below. His conclusory assertion that both the trial court and the Appellate Division simply arrived at an incorrect conclusion on this issue does not constitute the sort of "breakdown" referred to in Gates v. Henderson. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), aff'd, 852 F.2d 59 (2d Cir. 1988) (per curiam); accord, Capellan, 975 F.2d at 70 (observing that some sort of "disruption or obstruction of a state proceeding" of an egregious nature, e.g., the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record. Even if the state court erroneously decided the issue, a petitioner cannot gain federal review of a Fourth Amendment claim simply because a Federal court may reach a different result. See Capellan, 975 F.2d at 71.

Thus, this Court is precluded from considering Petitioner's fully litigated Fourth Amendment claim on habeas review. The claim is denied.

## 2. TRIAL COURT IMPROPERLY ADMITTED EVIDENCE OF A PRIOR CONVICTION

Petitioner contends that the trial court improperly admitted evidence of a prior conviction because that conviction was the product of an "unlawfully induced" and involuntary guilty plea. Pet. ¶22A; S.L., Page 3. Petitioner raised this claim on direct appeal to the Appellate Division, and it was rejected on the merits. However, Petitioner failed to raise this claim in his leave application to the New York State Court of Appeals. Petitioner's failure to do so renders the claim unexhausted.

For exhaustion purposes, 28 U.S.C. § 2254(b)(1)(A) requires a petitioner "[to] give the state courts one full opportunity to resolve constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 842. This includes filing an application for discretionary appellate review with the State's highest court if that right is available by statute. Id. at 845; accord Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000); Galdamez v. Keane, 394 F.3d 68, 72 (2d Cir. 2005).

Here, Petitioner filed an application for discretionary review with the New York Court of Appeals, but requested that the court review only the search and seizure issue discussed under "Section

IV, 1" above. See Petitioner's Leave Application dated January 26, 2006. Failure to request review of the claim that the trial court improperly admitted evidence of a prior conviction renders it unexhausted for habeas purposes. See Grey, 933 F.2d at 120-21 (finding Petitioner's habeas claims procedurally forfeited where Petitioner did not expressly request state's highest court to review all claims previously argued in his appellate brief); Jordan v. LeFevre, 206 F.3d 196 (2d Cir. 2000) (finding that Petitioner did not fairly present all claims to New York Court of Appeals for exhaustion purposes where he argued one claim in his leave application while attaching an appellate brief without explicitly alerting the state court to each claim raised). However, Petitioner's claim must be deemed exhausted but procedurally defaulted because state appellate review is no longer available to him. Petitioner cannot again seek leave to appeal the claim in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Court Rules § 500.10. Moreover, collateral review of this claim is also barred because Petitioner previously raised this claim on direct appeal, and the Appellate Division rejected it on the merits. Returning to state court to exhaust the claim by way of a CPL § 440.10 motion, therefore, would be futile. See CPL § 440.10(2)(a) ("the court must deny a motion to vacate a judgment

when the ground was previously determined on the merits upon an appeal from the judgment").

A finding of procedural default bars habeas review of the federal claim unless Petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 492 (1986); Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977). Petitioner makes no showing of the requisite cause and prejudice. He does, however, assert by way of vague, conclusory statement that he is innocent.[5] To establish actual innocence, a petitioner must support his claim "with new reliable evidence -- whether it be exculpatory scientific, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Schlup, 513 U.S. at 324. Petitioner's assertion -- without reference to any new evidence in support of his position -- is simply not enough to establish that a miscarriage of justice would result from the Court's failure to review his claim.

In any event, even if Petitioner were able to overcome the procedural bar, his claim is a matter of state evidentiary law and, as such, is not cognizable in this Court on habeas review. See

---

[5] In his Supplemental Letter submitted to the Court after the filing of his Petition, Petitioner states that: "[he] is innocent." S.L., Page 1.

Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Therefore, the claim is denied.

### 3. RACIAL COMPOSITION OF JURY AND SUFFICIENCY OF EVIDENCE

Petitioner contends that he was not tried by a jury of his peers because the jury was composed of all white members.[6] Pet. ¶22C; S.L., Page 3. Petition also alleges that the evidence was insufficient to support his convictions because fingerprint and handwriting analysis was not done on the checks, nor were any bank surveillance tapes showing Petitioner cashing the checks introduced into evidence. Pet. ¶22D; S.L., Page 3. Petitioner raises both of these claims for the first time in his habeas corpus petition. To that extent, the claims are unexhausted. See 28 U.S.C. § 2254(b)(1)(A). However, because these claims are based on alleged errors that would have been present in the record at the time of Petitioner's direct appeal but unjustifiably were not raised at that time, they are deemed exhausted but procedurally defaulted. See N.Y. Court Rules § 500.10; CPL § 440.10(2)(c).

A finding of procedural default bars habeas review of the federal claim unless Petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a miscarriage of justice. Murray, 477 U.S. at 492; Wainwright, 433 U.S. at 87-91.

---

[6] Petitioner identifies himself as "black" in his Petition. Pet. ¶22C. He states that: "[t]he jury was stacked in favor of the prosecution with whites only[,] including those who made clear their hatred for black people." S.L., Page 3.

Petitioner argues that cause for the default is attributable to appellate counsel's failure to brief the issues on appeal. Pet. ¶23. A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991); United States v. Frady, 456 U.S. 152, 168 (1982). However, such a claim may not be used, as here, to establish cause for the procedural default when it has not been raised as an independent claim in the state courts. Murray, 477 U.S. at 488-490; see e.g., Ross v. Burge, 03 Civ. 3867, 2008 U.S. Dist. LEXIS 20141, *20-22 (S.D.N.Y. March 21, 2008) (finding Petitioner's ineffective assistance of trial counsel claim cannot serve as cause for a procedural default because it was never presented to the state court as an independent claim); Zelaya v. Mantello, 00 Civ. 0865, 2003 U.S. Dist. LEXIS 15822, *15-16 (S.D.N.Y. Sept. 10, 2003) (finding Petitioner must have first exhausted his ineffective assistance of counsel claim in state court in order to claim ineffective assistance of counsel as cause for procedural default) (citing Edwards, 529 U.S. at 451-452)). Since Petitioner is unable to establish cause, the Court need not evaluate whether Petitioner was prejudiced by the default. And, as discussed above, Petitioner's bald assertion that "[h]e is innocent" is not enough to show that the failure of this Court to review the claim will result in a miscarriage of justice. Accordingly, these claims are denied.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: December 9, 2009
Rochester, New York